E-FILED
Friday, 28 December, 2007 03:48:38 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION



| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal No. 07-30 122 |
| | ) | |
| ALLEN W. BLEVINS, | ) | Violation: |
| | ) | 16 U.S.C. §§ 3372 & 3373. |
| Defendant. | ) | |

## INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

### Count One
(Lacey Act violation in 2004)

*Introductory Allegations*

1.  At all times material to this Information:

    **The Defendant**

    a.  Allen W. Blevins resided in Tennessee, was an amateur wildlife hunter who had hunted in Illinois for several years and displayed as trophies the mounted heads and antlers of deer he had killed. In addition, Allen W. Blevins was a hunting guide for Hadley Creek Outfitters in Pike County, Illinois.

    **Illinois Deer**

    b.  Illinois provided suitable habitat for white tailed deer (*Odocoileus virginianus*), which were often a menace to some farmers (because deer feed on crops in the field) and were a boon to some hunters (because wild deer in Illinois often are bigger and have larger antlers than deer in many other areas of

the United States). The State of Illinois had an interest in protecting its deer population while also protecting farm crops from an over-population of wild deer.

### Trophy Deer Racks

c.   A male or "buck" deer antlers were rated, scored and valued by hunters and collectors based on their size and the number of points they had. Deer antlers ("racks") were categorized by formation, described as either typical (a main beam with single "points" extending from it), or non-typical (anything other than typical). Measurements were made in inches and include several measurements, such as circumference mass, inside spread and length of antlers. An accumulative score in excess of 150 inches was considered a trophy typical antlered buck. A non-typical antlered buck must score a minimum of 185 inches to be considered a trophy animal. Providing trophy white tailed deer for paying clients has become a significant commercial business in Illinois. Pike County is nationally known as possessing some of the best trophy deer habitat in the United States. Due to the trophy deer produced in this area of west central Illinois, land prices are at an all-time high and investors are capitalizing on the land that produce large trophy deer. Television programs and investment companies utilize the killing of trophy deer in this area to sell their products as well as increase the value of their investment property.

### Deer Hunting Regulations

d.   Through its laws and regulations, the State of Illinois managed wildlife and regulated the taking of wildlife, to include white tailed deer, for the

purposes of providing public recreation and controlling wildlife populations. The seasons during which wildlife may be taken, the methods for taking wildlife, bag limits and possession limits were established through statutes, regulations and administrative rules. These standards permitted or restricted deer hunting (also called, "harvesting") by limiting, among other things, the times and ways that deer could be hunted, as well as the number of deer each hunter could kill.

    e.    Those laws and regulations included:

- **Hunting License and Deer Permit Rule.**
  A non-resident hunter applied for a deer permit through a lottery system managed by the Illinois Department of Natural Resources. Antlered deer (bucks) were permitted to be killed by obtaining an either sex deer permit. A non-resident hunting license was required in addition to the permit. The applicant must also have purchased a State Habitat Stamp prior to hunting. All hunters were required to have deer hunting permits on their person while hunting. [520 Illinois Compiled Statutes (ILCS) Section 5/2.25, 520 ILSC Section 5/2.26, 520 ILCS Section 5/3.1(a) and Administrative Code 670.20(c) and 670.40(a)]

- **The "One Buck" Rule.**
  Non-resident hunters applying for an archery deer permit received one either sex deer permit and an antlerless only deer permit, (referred to as a combination permit), thus permitting the non-resident hunter to harvest only one antlered deer (buck) and an antlerless deer, or two antlerless deer if the either sex permit was used on an antlerless deer. A non resident hunter was only permitted to kill one antlered deer during the season for which they obtained the permit, i.e. archery, muzzleloading, or shotgun season, and could not kill more than two antlered deer during all seasons combined. A non-resident hunter obtaining a combination archery deer permit was not permitted to kill an antlered deer once the either sex permit has been used. (520 ILCS 5/2.24, Administrative Rule 670.20(b) and 670.40(a))

- **The Tagging Rule.**
  A hunter who killed a deer was required to stop hunting immediately

and attach to the deer's carcass the "temporary deer harvest tag" that the Illinois Department of Natural Resources (ILDNR) issued the hunter with his or her deer permit. A hunter was prohibited from moving any deer he or she killed from the location where the deer fell unless the animal was tagged. (520 ILCS 5/2.24, Administrative Rule 670.40(d))

- **The Deer Check-In Rule.**
  Any hunter who killed a deer was required to deliver the deer to a designated ILDNR deer check station within 48 hours of killing the deer, whereupon, a permanent harvest tag would be attached to the leg of the deer upon check out at the check station. (520 ILCS 5/2.24, Administrative Rule 670.55)

- **The "Transfer Tag" Rule.**
  Hunters were prohibited from possessing, while in the field during archery deer season any deer permit issued to another person. (520 ILCS 5/2.26 and Administrative Code 670.40(e))

- **The "False Claim" Rule.**
  Hunters were prohibited from falsifying, altering or changing in any manner, any license or permit, or providing deceptive or false information which was required for any ILDNR record. (520 ILCS 5/2.38)

*The Defendant's Arrangements for 2004 Deer Hunting Season*

2.  During 2004, the defendant Allen W. Blevins, did work as a hunting guide for a commercial hunting entity known as Hadley Creek Outfitters located in Pike County, Illinois. This commercial business provided deer hunting opportunities to paying customers on property owned and leased by the business in Pike County, Illinois. Hunters were charged between $2500.00 to $3600.00 for a 6-day hunt. In addition, Allen W, Blevins did hunt with archery and firearm in Illinois on property owned or leased by Hadley Creek Outfitters during the 2004 season.

3.  In 2004, defendant Allen W. Blevins paid the ILDNR, through license purchases for a archery deer permit permitting him to kill one antlered or one antlerless deer (either sex permit) with a bow and arrow during the archery season in 2004. Allen W. Blevins also received two firearm deer permits in 2004 for Pike County that allowed him to kill one antlered or antlerless deer (either sex permit) in addition to a second permit to kill an antlerless only deer.

### *The Defendant's First Deer Kill in 2004*

4.  On October 1, 2004, the opening day of the Illinois archery season, defendant Blevins hunted on property leased by Hadley Creek Outfitters in Pike County, Illinois. Defendant Blevins was then licensed by the State of Illinois to kill one deer during archery season, as he was issued one either-sex deer permit.

5.  While hunting on October 1, 2004, defendant Blevins spotted a large trophy white-tailed deer whose antlers had ten points. Defendant Blevins then knew that, if he killed the 10-point buck, he would not be permitted to kill an additional antlered deer and would have no opportunity that archery season to collect a larger trophy.

6.  Defendant Blevins elected to shoot the buck with his bow. Defendant Blevins struck the buck with an arrow and killed the 10-point buck.

### *The Defendant's Unlawful Transportation and Possession of Deer*

7.  Although Defendant Blevins did have a lawful permit to hunt and kill the 10-point buck, the defendant chose not to place his "temporary harvest tag" on the deer as was required by Illinois law. Instead, after posing for pictures with the untagged deer for the Hadley Creek Outfitters website, the defendant

loaded the untagged buck into a vehicle and drove to Tennessee the next day.

### *Unlawful registration of Illinois untagged deer in Tennessee*

8.  On or about October 3, 2004, Defendant Blevins arrived at a taxidermy business in Powell, Tennessee along with the 10-point buck that he killed in Illinois on October 1, 2004. Defendant Blevins presented the employees at the business with a 2004 Tennessee Permanent Game Tag in which he registered the 10-point buck as being killed by him in Putnam County, Tennessee. Before leaving the check station with the 10-point deer, the defendant allowed the employees of the taxidermy business to take a photograph of the large trophy deer. The Polaroid photograph was displayed on the wall of the business.

### *The Defendant's Unlawful Hunting and Second Deer Killing*

9.  After killing one buck and thus exhausting his opportunity to lawfully take a different buck during the Illinois 2004 archery season, defendant Blevins continued to hunt for a buck on and about November 9-12, 2004, in violation of the laws and regulations of the State of Illinois.

10. On or about November 9-12, 2004, defendant Blevins along with another Tennessee hunter, hunted on Hadley Creek Outfitters property in Pike County, Illinois. During that hunt, the hunting partner of Blevins shot and killed a trophy 10-point deer, however defendant Blevins used his 2004 Illinois archery temporary deer harvest tag to unlawfully register this deer with the ILDNR on November 9, 2004. Also during this hunt, defendant Blevins unlawfully shot and killed his second buck of the archery season, a trophy 8-point white-tailed deer. According to ILDNR records, the Tennessee hunting partner registered the

8-point deer fraudulently as if the hunting partner killed the deer rather than Blevins, on November 12, 2004, all in violation of the laws and regulations of the State of Illinois.

11.  After the 10-point buck was unlawfully tagged and registered at the ILDNR check station as having been killed by defendant Blevins, Blevins transported the deer head and antlers from Illinois to Tennessee to have it mounted by a taxidermist.

### *The Killing of a Third Deer by the Defendant*

12.  On or about November 25, 2004, defendant Blevins continued to hunt for another buck during the Illinois archery season on Hadley Creek Outfitter property in Pike County, Illinois. On Thanksgiving Day, defendant Blevins did shoot and kill his third antlered buck, a trophy 10-point deer. Since defendant Blevins had previously used his 2004 archery deer permit to register a buck on November 9, 2004, the defendant concealed his violation of state and federal law when the defendant received an unused either-sex archery deer tag from another hunting partner of his. This 10-point deer that defendant Blevins killed was unlawfully tagged with the other hunter's temporary harvest tag and then registered with the ILDNR on November 25, 2004.

13.  Defendant Blevins also induced this hunting partner to check-in Defendant Blevin's third buck at the ILDNR Deer Check Station in Barry, Illinois, as this hunter had killed the buck when both defendant Blevins and this hunting partner knew that in fact defendant Blevins, and not the hunting partner, had killed the deer.

14. After the hunting partner checked the third buck in at the ILDNR Deer Check Station, defendant Blevins arranged to have the buck's head and antlers removed from its body so he could take them to a taxidermist in Tennessee to be mounted.

15. Defendant Blevins departed Illinois, transporting the heads and antlers of both bucks and associated hunting gear, back to Tennessee, where he had the specimens prepared by a taxidermist and displayed them as his trophies.

### *Defendant's Federal Lacey Act Violation*

16. On or about October 2, 2004, in Pike County in the Central District of Illinois and elsewhere, the defendant

**ALLEN W. BLEVINS**

knowingly transported wildlife – namely, the first 10-point white-tailed deer he killed – in interstate commerce from Illinois to Tennessee when, in the exercise of due care, the defendant knew and should have known that the wildlife was taken, possessed, and transported in violation of and in a manner unlawful under the laws and regulations of the State of Illinois, specifically 520 Illinois Compiled Statutes, 5/2.24, Administrative Rule 670.40(d) (tagging and transport), 520 ILCS 5/2.24, Administrative Rule 670.55 (registration) and 520 ILCS Section 5/2.38 [False Claim Rule].

In violation of Title 16, United States Code, Sections 3372(a)(2)(A) & 3373(d)(2).

## Count Two

### (Forfeiture Count – Lacey Act Violation in 2004)

As a result of the offenses described in this Information, the defendant

**ALLEN W. BLEVINS,**

shall forfeit to the United States any and all wildlife transported contrary to the provisions of Title 16, United States Code, Section 3372 or any regulation issued pursuant thereto, such wildlife to include, but not be limited to: one 10-point white-tailed deer mount killed by defendant Blevins on October 1, 2004; one 8-point white-deer mount killed by defendant Blevins on November 12, 2004; and one 10-point white-tailed deer mount killed by defendant Blevins on November 25, 2004.

All in violation of Title 16, United States Code, Sections 3372(a)(2)(A) and 3374(a)(1)(A).


_/s/ Gregory R. Gilmore for_
RODGER A. HEATON
UNITED STATES ATTORNEY

GMG